UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**NOT FOR PUBLICATION**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 12-01194 (CGM) |
| Plaintiff, | |
| v. | |
| KOOKMIN BANK, | |
| Defendant. | |

**MEMORANDUM DECISION DENYING DEFENDANTS' MOTION TO DISMISS**

**A P P E A R A N C E S :**

*Special Counsel for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York
By:    Eric R. Fish

*Counsel for Defendant, Kookmin Bank*
Cirillo Law Office
246 E 33rd Street – 1 FR
New York, New York 10016-4802
By:    Richard A. Cirillo

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion by the Defendant, Kookmin Bank ("Kookmin" or

"Defendant"), to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the

liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover

subsequent transfers allegedly consisting of BLMIS customer property.  Defendant seeks

dismissal for lack of personal jurisdiction, failure to state a claim for relief due to the safe harbor

provision of the Bankruptcy Code, failure to allege that Defendant received customer property,

and failure to plead a claim for relief under Rule 8 of the Federal Rules of Civil Procedure.  For

the reasons set forth below, the motion to dismiss is denied in its entirety.

## **Jurisdiction**

This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L.*

*Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1),

and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). This Court
has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§
1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and
the Amended Standing Order of Reference, dated January 31, 2012. In addition, the District
Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order,
Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this
Court has jurisdiction under the latter provision.  Personal jurisdiction has been contested by
Kookmin and will be discussed *infra*.

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its
SIPA proceeding. *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir.
2021), cert. denied sub nom. *Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on March 22, 2012.  (Compl., ECF[1] No. 1).  Via the
complaint ("Complaint"), the Trustee seeks to recover $42,010,303 million in subsequent
transfers made to Defendant.  (*Id.* ¶ 2).  The subsequent transfers were derived from investments
with BLMIS made by Fairfield Sentry Limited ("Fairfield Sentry").  (*Id.*)  Fairfield Sentry is
referred to as a "feeder fund" because the intention of the fund was to invest in BLMIS.  (*Id.* ¶¶
2, 7).

Defendant is a bank organized under the laws of South Korea.  (*Id.* ¶ 22).  It was the
largest bank of South Korea at the time it allegedly received the subsequent transfers.  (*Id.* ¶ 3).
Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry
and related defendants to avoid and recover fraudulent transfers of customer property in the

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary
proceeding 12-01194-cgm.

amount of approximately $3 billion.  (*Id.* ¶ 35).  In 2011, the Trustee settled with Fairfield

Sentry.  (*Id.* ¶ 40).  As part of the settlement, Fairfield Sentry consented to a judgment in the

amount of $3.054 billion (Consent J., 09-01239-cgm, ECF No. 109) but repaid only $70 million

to the BLMIS customer property estate.  (Compl. ¶ 40, ECF No. 1).  The Trustee then

commenced a number of adversary proceedings against subsequent transferees like Kookmin to

recover the approximately $3 billion in missing customer property.

In its motion to dismiss, Defendant argues that the Trustee has failed to plead personal

jurisdiction, failed to allege that Defendant received BLMIS customer property, and failed to

plead a claim for relief under Rule 8 of the Federal Rules of Civil Procedure.  Defendant further

argues that the Court should dismiss the complaint due to the Safe Harbor under Bankruptcy

Code Section 546(e).  The Trustee opposes the motion to dismiss.   The Court heard oral

argument concerning personal jurisdiction and customer property on October 19, 2022.  (Hr'g

Tr., Oct. 19, 2022, ECF No. 98).  For the reasons set forth herein, the motion to dismiss is denied

in its entirety.

## <u>Discussion</u>

**Personal Jurisdiction**

Defendant objects to the Trustee's assertion of personal jurisdiction.  The Trustee argues

in the Complaint that Defendant purposefully availed itself of the laws of the United States and

New York by "directing funds to be invested with New York-based BLMIS through Fairfield

Sentry" and "by withdrawing money from Fairfield Sentry."  (Compl. ¶ 6, ECF No. 1.)

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2)

of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that

jurisdiction exists."  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)).  A trial court has

considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2).

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).  "'It may

determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the

motion; or it may conduct an evidentiary hearing on the merits of the motion.'"  *Id.* (quoting

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP

Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the

motion by pleading in good faith, legally sufficient allegations of jurisdiction."  *Dorchester Fin.*,

722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d

Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565

(Bankr. S.D.N.Y. 2021) (same).  In this case, the Trustee has alleged legally sufficient

allegations of jurisdiction simply by stating that Defendant "knowingly direct[ed] funds to be

invested with New York-based BLMIS."  (Compl. ¶ 6, ECF No. 1).  This allegation alone is

sufficient to establish a prima facie showing of jurisdiction over Defendant in the pre-discovery

stage of litigation.  That being stated, this was not the only allegation made by the Trustee.

At the pre-discovery stage, the allegations need not be factually supported.  *See

Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013) (an averment

of facts is necessary only after discovery).  In order to be subjected to personal jurisdiction in the

United States, due process requires that a defendant have sufficient minimum contacts with the

forum in which defendant is sued "'such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice.'"  *Picard v. Bureau of Labor Ins.* (*In re

BLMIS*), 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) ("*BLI*") (quoting *Int'l Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945)).  The pleadings and affidavits are to be construed "'in

the light most favorable to the plaintiffs, resolving all doubts in their favor.'" *Chloé v. Queen*

*Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward*

*Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594

B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

> The Supreme Court has set out three conditions for the exercise of specific
> jurisdiction over a nonresident defendant.  First, the defendant must have
> purposefully availed itself of the privilege of conducting activities within the forum
> State or have purposefully directed its conduct into the forum State.  Second, the
> plaintiff's claim must arise out of or relate to the defendant's forum conduct.
> Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the

privilege of doing business in the forum and could foresee being haled into court there." *Charles*

*Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018).  "Although a defendant's

contacts with the forum state may be intertwined with its transactions or interactions with the

plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an

insufficient basis for jurisdiction."  *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150

(2d Cir. 2019) (cleaned up).  "It is insufficient to rely on a defendant's random, fortuitous, or

attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific

jurisdiction."  *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by

knowing, intending and contemplating that the substantial majority of funds invested in Fairfield

Sentry would be transferred to BLMIS in New York to be invested in the New York securities

market."  *BLI*, 480 B.R. at 517.

Defendant argues that the Trustee has failed to allege sufficient minimum contacts with

the United States.  The Complaint suggests otherwise.  In the Complaint, the Trustee alleges that

Defendant "direct[ed] funds to be invested with New York-based BLMIS through Fairfield

Sentry" and "knowingly received subsequent transfers from BLMIS by withdrawing money from

Fairfield Sentry."  (Compl. ¶ 6, ECF No. 1).  The Trustee has also alleged that Fairfield Sentry

invested almost all of its assets in BLMIS.  *See* Fairfield Compl. ¶ 89, *Picard v. Fairfield Inv*

*Fund Ltd.*, Adv. Pro. No. 09-1239 ECF No. 286 (the "Fairfield Amended Complaint") ("Under

Fairfield Sentry's offering memorandum, the fund's investment manager was required to invest

no less than 95% of the fund's assets through BLMIS.") (adopted by reference at paragraph 35 of

this Complaint).

The Trustee has submitted additional evidence in response to the motion to dismiss.

Attached as exhibits to the Fish Declaration, the Trustee has provided evidence that Defendant

used bank accounts in New York to send subscription payments to and receive redemption

payments from Fairfield Sentry.  (Fish Decl. Exs. 1–4, ECF No. 88).

Defendant disputes purposeful availment by arguing that it was merely a trustee of trusts

that were managed and directed by third-party asset managers not affiliated with Kookmin.

Kookmin states that its role to "execute the asset managers' instructions to purchase, hold in

custody, or redeem trust assets, including any Fairfield shares," and that it held no responsibility

to "perform diligence on, investigate, or monitor the trusts' assets, including the Fairfield shares."

(Def.'s Mem. 16–17, ECF No. 82).  Kookmin states that it had few contacts with Fairfield

"except to buy, hold, and redeem shares at the specific direction of the asset managers."  (*Id.* 17).

Kookmin claims that the October 2004 Fairfield Private Placement Memorandum would

have told Defendant very little about BLMIS.  (*Id.* 18).  ("[E]ven if it read the entire PPM cover

to cover, [Kookmin Bank] would not have learned anything about BLMIS or Bernard Madoff or the Fairfield investments relevant to this motion or this lawsuit."). At oral argument, Defendant further argued that "KB did not know that BLMIS and Madoff were involved." (Hr'g Tr. 62:11–12, Oct. 19, 2022, ECF No. 98).

The Trustee has attached two subscription agreements to the Fish Declaration, one signed on February 24, 2004 (Fish Decl. Ex. 1, ECF No. 88) and one signed on February 25, 2004. (Fish Decl. Ex. 2, ECF No. 88). The agreements require redemption payments and wires to be made through an account held by Kookmin at "Deutsche Bank Trust Company Americas, NY" in New York, NY. (*Id.* ¶ 30(g)). Kookmin agreed in both agreements to send subscription payments to Fairfield Sentry's HSBC bank account in New York. (*Id.* ¶ 3).

A subscription agreement provided with the Park Declaration states that Defendant received and read separate Fairfield placement memoranda. (Park Decl. Ex. 1 App B ¶ 7, ECF No. 83). The Fairfield placement memorandum that Defendant submitted also disclosed BLMIS's role as the custodian for Fairfield Sentry. (Park Decl. Ex. 1, Fairfield Sentry Placement Mem., ECF No. 83). It states that Bernard L. Madoff Investment Securities . . . serve as subcustodians for certain assets of the Fund" (*Id.* 14). The document goes on to state that "[c]urrently BLM has approximately 95% of the Fund's assets under custody." (*Id.* 15). The evidence provided shows that Defendant used bank accounts in New York to send subscription payments to and receive redemption payments from Fairfield Sentry.

**Arise out of or relate to the defendant's forum conduct**

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017, 1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came

about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court

need only find "an affiliation between the forum and the underlying controversy." *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.*

(*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with

the jurisdiction that relate to the cause of action are more substantial, however, it is not

unreasonable to say that the defendant is subject to personal jurisdiction even though the acts

within the state are not the proximate cause of the plaintiff's injury.") (internal quotations

omitted).

The Trustee is asserting subsequent transfer claims against Kookmin for monies it

received from Fairfield Sentry. (Compl. ¶¶ 44–46, ECF No. 1). These allegations are directly

related to investment activities with Fairfield and BLMIS. *Picard v. BNP Paribas S.A.* (*In re*

*BLMIS*), 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding that the redemption and other

payments the defendants received as direct investors in a BLMIS feeder fund arose from the

New York contacts such as sending subscription agreements to New York, wiring funds in U.S.

dollars to New York, sending redemption requests to New York, and receiving redemption

payments from a Bank of New York account in New York, and were the proximate cause of the

injuries that the Trustee sought to redress).

The suit is affiliated with the alleged in-state conduct. *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising

personal jurisdiction over Kookmin is reasonable and "comport[s] with fair play and substantial

justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal quotations

omitted).  Factors the Court may consider include the burden on the defendant, the forum State's

interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective

relief, the interstate judicial system's interest in obtaining the most efficient resolution of

controversies, and the shared interest of the several States in furthering fundamental substantive

social policies. *Id.* at 477.

The exercise of jurisdiction is reasonable.  Defendant is not burdened by this litigation.

Kookmin has actively participated in this Court's litigation for over ten years.  It is represented

by highly competent U.S. counsel and submitted to the jurisdiction of New York courts' when it

signed subscription agreements with Fairfield Sentry.  The forum and the Trustee both have a

strong interest in litigating BLMIS adversary proceedings in this Court.  *Picard v. Maxam

Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474

B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y.

2010); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009);

*Picard v. Fairfield Greenwich Grp., (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 568 (Bankr.

S.D.N.Y. 2021); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a

compelling interest in allowing domestic estates to recover fraudulently transferred property.").

By alleging that Defendant intentionally invested in BLMIS, the Trustee has met his

burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS.  As

recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy

into feeder funds that placed all or substantially all of their assets with Madoff Securities, they

knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019).   The

Trustee has made a prima facie showing of personal jurisdiction with respect to the subsequent

transfers at issue in this Case.

**12(b)(6) Standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  The claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.").  In deciding a motion to dismiss, the Court should assume the factual allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief.  *Iqbal*, 556 U.S. at 679.  "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted).  A document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous

information and relied on it in framing the complaint.  *DeLuca v. AccessIT Grp., Inc.*, 695 F.

Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover $42,010,303 in subsequent transfers made to Defendant

by the Fairfield Funds.  (Compl. ¶¶ 2, 41, ECF No. 1).

**Recovery of Subsequent Transfers**

Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided

transfers of customer property from initial transferees as well as from "any immediate or mediate

transferee of such initial transferee."  11 U.S.C. § 550(a).  "To plead a subsequent transfer claim,

the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent

transferee of that initial transferee, that is, that the funds at issue originated with the debtor."

*Picard v. BNP Paribas S.A. (In re BLMIS),* 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also*

*SIPC v. BLMIS (In re Consol. Proc. On 11 U.S.C. § 546(e))*, No. 12 MC 115, 2013 WL

1609154, at *7 (S.D.N.Y. Apr. 15, 2013).  "Federal Civil Rule 9(b) governs the portion of a

claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a

claim to recover the subsequent transfer."  *BNP Paribas*, 594 B.R. at 195 (*citing Sharp Int'l*

*Corp. v. State St. Bank & Trust Co., (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005).

The Trustee only needs to provide "a short and plain statement of the claim showing that

the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The plaintiff's burden at the pleading

stage does not require exact accounting of the funds at issue.  *BNP Paribas*, 594 B.R. at 195.

Rather "[t]he plaintiff must allege the necessary vital statistics – the who, when, and how much –

of the purported transfers to establish an entity as a subsequent transferee of the funds."  *Id.*

However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar

accounting of the exact funds at issue." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018).

While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. *IBT Int'l Inc. v. Northern (In re Int'l Admin Servs., Inc.)*, 408 F.3d 689, 706-07 (11th Cir. 2005). The Trustee is free to pursue any of the immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 706-07 (11th Cir. 2005).

The Trustee pleaded the avoidability of the initial transfers (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the Fairfield Amended Complaint filed against Fairfield Sentry in adversary proceeding 09-01239. (Compl. ¶ 35, ECF No. 1) ("The Trustee incorporates by reference the allegations contained in the Fairfield Amended Complaint as if fully set forth herein."). Whether the Fairfield Complaint properly pleads the avoidability of the initial transfer, is governed by Rule 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

> Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt a more liberal view since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions that extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded.

*Picard v. Cohmad Secs. Corp.,* (*In re BLMIS*), 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

**Adoption by Reference**

Adoption by reference is governed by Rule 10 of the Federal Rules of Civil Procedure.

Fed. R. Civ. P. 10(c).  Rule 10(c) states: "A statement in a pleading may be adopted by reference

elsewhere in the same pleading or in any other pleading or motion."  The district court has

already found that adoption by reference of the entire Fairfield Amended Complaint is proper.

*See SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36

(S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services

incorporates by reference the complaints against Kingate and Fairfield, including the allegations

concerning the avoidability of the initial transfers, and further alleges the avoidability of these

transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and

Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

The Court will follow the district court's instruction.  As was explained in *In re Geiger,*

pleadings filed in the "same action" may be properly adopted by reference in other pleadings in

that action.  446 B.R. 670, 679 (Bankr. E.D. Pa. 2010).  The Fairfield Amended Complaint was

filed in the "same action" as this adversary proceeding for purposes of Rule 10(c).  *Id.*  Cases

within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding.  *In re*

*Terrestar Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017)

("Adversary proceedings filed in the same bankruptcy case do not constitute different cases.");

*see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr.

S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . .

. "); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr.

S.D.N.Y. 2019), (citing *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of

the case doctrine applies across adversary proceedings within the same main case), *aff'd*, 943

F.3d 125 (2d Cir. 2019)); *Perez v. Terrastar Corp.* (*In re Terrastar Corp.*), No. 16 Civ. 1421

(ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the

same bankruptcy case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d

Cir. June 29, 2017); *Bourdeau Bros., Inc. v. Montagne* (*In re Montagne*), No. 08-1024 (CAB),

2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the

same main case do not constitute different 'cases.'").

Some courts have worried that wholesale incorporation of a pleading can lead to

"confusing and inconvenient" results. *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47

(E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010). That is not a

concern in these proceedings. Kookmin, like many other subsequent transfer defendants in this

SIPA proceeding, is aware of what has been filed in the other adversary proceeding in this SIPA

liquidation. It routinely follows what is happening on a proceeding-wide basis. *See* Stip., ECF

No. 64 (dismissing adversary proceeding based on consolidated extraterritoriality ruling).

Allowing the Trustee to incorporate the Fairfield Amended Complaint by reference, does

not prejudice Defendant. On the other hand, dismissing this Complaint and permitting the

Trustee to amend his Complaint to include all of the allegations that are already contained in the

Fairfield Amended Complaint, would prejudice all parties by delaying the already overly

prolonged proceedings. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM),

Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("Rule 15

places no time bar on making motions to amend pleadings and permits the amending of

pleadings "when justice so requires.").

Through the adoption of the Fairfield Amended Complaint, the Trustee has adequately

pleaded, with particularity, the avoidability of the initial transfers due to the Fairfield Funds'

knowledge of BLMIS' fraud.  Fairfield Compl. ¶¶ 314–18, 09-01239, ECF No. 286; *see also*

*SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36

(S.D.N.Y. 2013) ("[T]he Court directs that the following adversary proceedings be returned to

the Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . .").

**The Safe Harbor does not bar the avoidance of the Fairfield Initial Transfers**

Kookmin has raised the "safe harbor" defense, found in 11 USC § 546(e), to the

Trustee's allegations.  Section 546(e) is referred to as the safe harbor because it protects a

transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial

institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial

institution [or] financial participant ... in connection with a securities contract."  11 U.S.C. §

546(e).

The safe harbor "is an affirmative defense, but it can be raised in the context of a motion

to dismiss if the complaint and other documents that the Court can consider establish it and

'where the facts are not in dispute, or where there is already a sufficiently detailed factual record

to decide whether the applicable statutory definitions are met, such that the application of

Section 546(e) presents a straightforward question of statutory interpretation of the type that is

appropriately resolved on the pleadings.'"  *Halperin v. Morgan Stanley Inv. Mgmt.* (*In re Tops*

*Holding II Corp.*), No. 18-22279 (RDD), Adv. No. 20-08950 (RDD), 2022 WL 6827457, at *9

(Bankr. S.D.N.Y. Oct. 12, 2022) (quoting *Bankr. Estate of Norkse Skogindustrier ASA v. Cyrus*

*Capital Partners*, 629 B.R. 717, 759 (Bankr. S.D.N.Y. 2021)).  "By its terms, the safe harbor is a

defense to the avoidance of the **initial** transfer.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594

B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis added).  However, where the initial transferee

fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case

here, the subsequent transferee is entitled to raise a § 546(e) defense against recovery of those funds. *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).

On the issue of the safe harbor, the Court adopts the district court's reasoning in: *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767 (S.D.N.Y. Nov. 3, 2022).

The Trustee has alleged that Fairfield Sentry knew the payments it received from BLMIS were neither settlement payments nor payments in connection with a securities contract. "The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors. If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account. In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law." *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)).

The district court determined that "those defendants who claim the protections of Section 546(e) through a Madoff Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims on this ground must be denied." *SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013 *see also Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022) ("[I]n

circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e)

d[oes] not apply as a matter of its express terms.").

    This Court is powerless to reconsider this issue, agrees with the district court's reasoning,

and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second

Circuit. *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*),

773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that

BLMIS was actually engaged in the business of effecting securities transactions, have every right

to avail themselves of all the protections afforded to the clients of stockbrokers, including the

protection offered by § 546(e).").

    This Court has already determined that the Fairfield Amended Complaint contains

sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on

a Rule 12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM),

Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he

Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of

Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled

[actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's

fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the

Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield

Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl.

¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at

BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS");

Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield

Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶

325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International

Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital

had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG

partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the

result of the split strike conversion strategy (the 'SSC Strategy'). They knew BLMIS's equities

and options trading volumes were impossible. They knew that BLMIS reported impossible, out-

of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was

not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an

independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options

counterparties. They knew their clients and potential clients raised numerous due diligence

questions they would not and could not satisfactorily answer. They knew Madoff would refuse to

provide them with honest answers to due diligence questions because it would confirm the

details of his fraud.  They knew Madoff lied about whether he traded options over the counter or

through the exchange. They knew they lied to clients about BLMIS's practices in order to keep

the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's

direction.").

"In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he

seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim

the protections of Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv.

Sec. LLC*, No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

This Court determined that the Fairfield Complaint is replete with allegations demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021). The Trustee's allegations in the Fairfield Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

**The Safe Harbor Cannot be Used to Defeat a Subsequent Transfer**

Kookmin argues that the safe harbor prevents the Trustee from avoiding the subsequent transfers on account of the securities contract between Fairfield and Defendant.

The safe harbor is not applicable to subsequent transfers. "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e) (failing to include § 550 in its protections). Since there must be an initial transfer in order for the Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned. The safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not "avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018).

Defendant is not permitted to raise the safe harbor defense on their own behalf as subsequent transferees.

**BLMIS Customer Property**

Defendant argues that this Court needs to consider all of the subsequent transfer cases

pending before this Court in order to determine whether allegations in this Complaint are

plausible.  At oral argument, Defendant argued that considering amounts sought by the Trustee

in other cases is appropriate because "this is one big case. All of the adversary proceedings are

part of it."  (Hr'g Tr. 69:16–17, Oct. 19, 2022, ECF No. 98).  The Trustee's arguments, taken

together, "allege a much greater amount of money being paid out by Fairfield than being paid by

BLMIS to Fairfield."  (*Id.* at 69:20–21).  Defendant argues that this makes the allegations alleged

by the Trustee implausible, as "either the Defendant, KB here, got its money from BLMIS, or it

got its money from another source."  (*Id.* at 69:22–23).  Defendant proposes an "alternative

explanation," by supposing that Fairfield Sentry could have paid redemption requests with funds

from new clients, untainted by investment with BLMIS, or from other unspecified sources.

(Def.'s Mem. 9, ECF No. 82).

This is not the first time that the Court has heard such allegations from subsequent

transfer defendants—but these allegations are not contained in the Complaint and so, they are not

an appropriate basis for dismissal on a Rule 12(b)(6) motion.  The Court will determine if this

money came from BLMIS or from some other source at a later date.

To consider allegations made in dozens of other complaints and determine whether

Fairfield Sentry sent all BLMIS-related funds to other defendants, against whom the Trustee has

filed complaints in this SIPA proceeding, would be impractical.  This undertaking is not required

at this stage of the litigation.  The other complaints have not been adopted by reference by the

Trustee in this adversary proceeding and, as such, are not within the Court's power to consider

on a Rule 12(b)(6) motion.  *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) ("A

district court, in deciding whether to dismiss a complaint under Rule 12(b)(6), is generally

limited to the facts as presented within the four corners of the complaint, to documents attached

to the complaint, or to documents incorporated within the complaint by reference.") (citing

*Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).

In order to determine how Fairfield Sentry spent the billions of dollars it received from

BLMIS, this Court would need review financial documents in order to trace the monies to all of

Fairfield Sentry's principals, insiders, creditors, and customers.  Undoubtedly, the Court will

trace and calculate how Fairfield Sentry spent its BLMIS (and any non-BLMIS) funds at a later

stage of litigation.  At this stage, the Trustee need only assert allegations that make it seem

plausible that Defendant received BLMIS monies.

In this case, the Trustee is not seeking to collect $5 billion from Kookmin.  He is seeking

only $42,010,303, which could easily come from the $3 billion Fairfield received from BLMIS.

"[T]he motion may be granted only where it appears beyond doubt that the plaintiff can prove no

set of facts in support of his claim that would entitle him to relief."  *McKenna v. Wright*, 386

F.3d 432, 436 (2d Cir. 2004) (cleaned up).  If the Court were to accept Defendant's argument, it

would need to do one of two things: 1) dismiss ALL of the Trustee's subsequent transfer claims

in all of the adversary proceedings since the Court has no idea which transfers came from

BLMIS customer property; or 2) hold a pre-discovery trial on all of the subsequent transfers

actions to determine which transfers were made from the $3 billion of BLMIS customer property

and which were not.  The Court is simply not willing to have such a trial at this stage of

litigation.

The Trustee has pleaded that "approximately $42,010,303 of the money transferred from

BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to Defendant

Kookmin Bank." (Compl. ¶ 41, ECF No. 1). The exhibits attached to the Complaint provide

Defendant with the "who, when, and how much" of each transfer. *Picard v. BNP Paribas S.A.*

(*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); (Compl. Exs. B, C, ECF No. 1)

(indicating the dates and amounts of the transfers in question); *cf. Picard v. Shapiro* (*In re*

*BLMIS*), 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (dismissing for failure to plausibly imply

that the initial transferee made any subsequent transfers.). The Fairfield Complaint, which is

incorporated by reference into this, alleges that the Fairfield Fund was required to invest 95% of

its assets in BLMIS. (Fairfield Compl. ¶ 89, Adv. Pro. No. 09-1239, ECF No. 286); *see also*

(Fairfield Compl. ¶ 91) ("From the beginning, to comport with Madoff's requirement for BLMIS

feeder funds, Fairfield Sentry ceded control of not only its investment decisions, but also the

custody of its assets, to BLMIS."). The Complaint plausibly alleges that Fairfield Sentry did not

have any assets that were not customer property.

Taking all allegations as true and reading them in a light most favorable to the Trustee,

the Complaint plausibly pleads that Kookmin received customer property because Fairfield

Sentry did not have other property to give. The calculation of Fairfield Sentry's customer

property and what funds it used to make redemption payments are issues of fact better resolved

at a later stage of litigation.

### <u>Conclusion</u>

For the foregoing reasons, Defendant's motion to dismiss is denied.  The Trustee shall

submit a proposed order within fourteen days of the issuance of this decision, directly to

chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local

Bankruptcy Rule 9074-1(a).



**Dated: December 9, 2022**
**Poughkeepsie, New York**

/s/ **Cecelia G. Morris**
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**